FILED
APR 18 2011

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WANDA MEDINA,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

CV-10-404-PK

FINDINGS AND RECOMMENDATION

PAPAK, Magistrate Judge:

        Plaintiff Wanda Medina (Medina) brings this action for judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) and supplemental security income (SSI) payments under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the following reasons, the Commissioner's decision should be affirmed.

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Medina was fifty two years old at the time of the administrative hearing. Admin. R. 115.[1] She earned a high school degree and some college credit. *Id.* at 302. She previously worked as a bill collector, forklift operator, insurance sales associate, and as a customer service representative. *Id.* at 58. Medina alleges disability due to diabetes, depression, anxiety, bipolar disorder, sleep apnea, asthma, muscoloskeletal impairments, high blood pressure and high cholesterol. She filed for disability on January 9, 2008 alleging disability from December 30, 2001, and later amended the date to September 5, 2005. Her application was denied initially and on reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on August 26, 2009. The ALJ found Medina satisfied the insured status requirements for a claim under Title II through September 30, 2007. Medina must establish that she was disabled on or before that date to prevail on her DIB claim. 42 U.S.C. § 423(a)(1)(A); *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). The ALJ issued an opinion on September 28, 2009, finding Medina not disabled, which is the final decision of the Commissioner. This action followed.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3).

---

[1] Citations to "Admin. R." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer.

The Commissioner has established a sequential process of up to five steps for determining whether a person over the age of 18 is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ applied the five step disability determination analysis and found at step one that Medina had not engaged in any substantial gainful activity (SGA) since September 5, 2005. Admin. R. 13. At step two, he determined that Medina has the medically severe impairments of diabetes mellitus and degenerative joint disease. *Id.* At step three the ALJ found that Medina did not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app.1. *Id.* at 15.

The ALJ found Medina had the following residual functional capacity (RFC):

> to lift and/or carry up to 10 pounds occasionally and with some frequency but not repetitively, stand 30 minutes at a time, walk two blocks at a time on a flat surface, and sit up to one hour at a time. The claimant has limited motion in the left upper extremity, is right handed, and can climb six stair steps with a rail. The claimant has mild impairment in short term memory and concentrations and mild impairment in ability to mix with groups of people. The claimant has difficulty with fatigue and has the stamina of 90 percent of a normal individual.

*Id.* at 16. The ALJ elicited the testimony of a vocational expert (VE) and found at step four that Medina was capable of performing her past relevant work as a customer service representative. *Id.* at 19. The ALJ proceeded to step five and based on the testimony of the VE found there were additional jobs in the national economy that Medina could perform and that she was therefore not disabled within the meaning of the Social Security Act. *Id.* at 20.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995).

The ALJ is responsible for "determining credibility, resolving conflicts in the medical testimony, and resolving ambiguities." *Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir. 2001)(citations omitted). If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Batson v. Commissioner of Soc. Sec. Admin.,* 359 F.3d at 1193.

## DISCUSSION

Medina alleges the ALJ erred in rejecting the opinion evidence of Dr. Kim and Nurse Practitioner (NP) Anderson regarding Medina's mental impairments.[2] Medina contends the rejection of this evidence caused the ALJ to err in determining her RFC and in evaluating the vocational evidence. She further alleges that this evidence is sufficient to find her disabled and asserts that this case should be remanded for an award of benefits.

### I.    Step Two Severe Impairments

Medina contends the ALJ erred in finding her affective disorder was nonsevere. At step two, the Commissioner determines whether the claimant has a medically severe impairment or

---

[2]The Commissioner points out that Medina did not argue the ALJ erred in evaluating her credibility, which formed a part of the basis for the ALJ's rejection of the opinion of Dr. Kim and NP Anderson. Medina replied that she "inherently" argued the credibility issue.

4 - FINDINGS AND RECOMMENDATION

combination of impairments. If there is no finding of severe impairment, the Commissioner will find the claimant "not disabled" without continuing the remaining steps of the sequential process. 20 C.F.R.§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); SSR 85-28. Medina bears the burden of proving that her impairments are severe. 20 C.F.R. §§ 404.1512, 416.912; *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).

The ALJ considered the four functional areas set out in the regulations for evaluating mental disorders and cited the opinion of Dr. McKenna, an examining psychologist. Admin. R. 14-15, 301-306. The ALJ noted that Medina had no mental limitations regarding activities of daily living (ADLs), and that her limitations were primarily based on her alleged physical impairments. *Id.* He further noted that Medina had mild limitations in social functioning and although she denied problems getting along with people, she also reported finding people annoying and irritating. *Id.* at 15, 303-304. The ALJ found only mild limitations in concentration, persistence and pace. *Id.* He noted that although she reported memory problems to the state agency, she displayed only minimal limitations in short term memory and concentration on examination. *Id.* at 15, 174,179. 304-305. The ALJ also noted no evidence of episodes of decompensation of any duration. *Id.* at 15, 304.

Medina asserts her mental impairment is severe, citing the form completed by mental health nurse practitioner (NP) Anderson in August 2009. *Id.* at 971-973. NP Anderson diagnosed Medina with Bipolar II Disorder and noted that her medications were reasonably effective but she had break through symptoms. She stated Medina had moderate limitations in ADLs, marked limitations in maintaining social functioning, and marked limitations in concentration, persistence, and pace. *Id.* at 972. NP Anderson also noted extended episodes of

5 - FINDINGS AND RECOMMENDATION

decompensation, although she was unsure of the number or dates. She also noted that Medina would likely be absent more than two days a month from work. *Id.*

The ALJ discounted this opinion because NP Anderson is not an acceptable medical source. *Id.* at 18. An acceptable medical source is one who is able to establish a medically determinable impairment, such as a physician or psychologist. 20 C.F.R. §§ 404.1513, 416. 913. The opinion of a nurse practitioner may be used, however, to demonstrate the severity of an impairment. *Id.* The ALJ found NP Anderson's assessment not consistent with the treatment notes found throughout the record or with the opinion of Dr. McKenna. Admin. R. 18.

NP Anderson's treatment notes support the ALJ's finding. Medina began treatment with NP Anderson on March 10, 2008, and her initial notes indicate a diagnosis of Bipolar II Disorder with symptoms of depression and irritability, some of which was situational. *Id.* at 685, 699. She prescribed medications. NP Anderson noted improvement in June 2008, noting Medina's affect was "much brighter." *Id.* at 678-679. On July 18, 2008, NP Anderson noted Medina stated she was "pretty good," her mood was even, and she was returning to her old self. *Id.* at 674-675. Her assessment was Bipolar Affect, mixed, unspecified. By August 2008, NP Anderson noted Medina's depression was controlled and she had no symptoms of mania. *Id.* at 670. NP Anderson noted on September 26, 2008, that Medina was doing well with no symptoms of depression or mania. *Id.* at 663.

NP Anderson noted Medina stated she was doing well overall in October 2008. *Id.* at 658-659. On November 14, 2008, NP Anderson noted Medina stated she was "doing great," with no symptoms of depression or mania. *Id.* at 656. NP Anderson noted on January 12, 2009 that Medina was experiencing fleeting depression but was ill and had roommate problems. She noted

Medina's symptoms were likely to improve when she recovered from her infection and her living situation was stable. *Id.* at 649. On February 9, 2009, NP Anderson noted Medina stated she was doing well, but continued to have some stress around roommate problems. *Id.* at 642. NP Anderson noted on March 30, 2009 that Medina had to evict her roommate with the aid of police and was feeling slightly manic. *Id.* at 637-638. NP Anderson noted on April 27, 2009 that Medina continued to have stress and anxiety around family issues but was doing "okay." *Id.* at 633.

The treatment notes from other mental health providers note a diagnosis of major depressive disorder; a probable diagnosis of Bipolar Disorder; improvement on medications; and that Medina's mood, affect, memory, attention, concentration, judgment, and behavior were all within normal limits. *Id.* at 359, 363-364, 370-371, 644, 661, 671, 675, 677, 702-703, 706-708, 713, 718-719, 726, 729, 731, 734.

Medina asserts that Dr. Kim signed NP Anderson's completed form and therefore the assessment is from an acceptable medical source. Dr. Kim submitted an assessment on July 16, 2009, which included a list of diagnoses from Medina's medical records. *Id.* at 967-970. The list of active problems and diagnoses includes bipolar affect, mixed-unspecified. *Id.* at 968. Dr. Kim stated Medina's main symptoms were of chronic pain and the "bulk of her illness" was her mental health issues. *Id.* at 969. Dr. Kim stated, "I'm not quite sure what her symptoms are, but she has noted problems with sleep, mood, concentration, energy, and memory in the past. She is working with a mental health provider about this and I will defer to her, Anna Anderson, about her diagnoses and prognoses." *Id.*

The ALJ noted that although Dr. Kim signed NP Anderson's completed form, her own letter deferred any opinion regarding mental impairments to NP Anderson. *Id.* at 18. The ALJ also noted that Dr. Kim provided no functional assessment of Medina's abilities or limitations. He also agreed with a testifying physician, Dr. Rullman, that Dr. Kim's opinion departed substantially from the rest of the evidence of record and it appeared that Dr. Kim was advocating on behalf of Medina.

The ALJ found Medina has severe impairments and he considered the combined effect of all Medina's impairments, severe and nonsevere, in the remaining steps of the disability analysis. *Id.* at 15-17, *See,* 20 C.F.R. §§ 404.1523, 416.923. The step two inquiry is a screening device to dispose of groundless claims. *Bowen v Yuckert,* 482 U.S. at 153. Once a severe impairment is found the analysis proceeds to step three. The issue is whether the ALJ properly assessed, in his RFC determination, whether there were functional limitations from any impairment or combination of impairments that affect Medina's ability to work.

## II.   RFC

### A. Medical Evidence

Medina asserts the ALJ erred in rejecting the opinion of her treating physician, Dr. Kim. She asserts Dr. Kim agreed with NP Anderson's assessment that she had marked limitations in maintaining social functioning, concentration, persistence, and pace. Social security regulations specify that the most weight is given to the opinions of treating physicians, followed by examining physicians, and the least amount of weight is given to nonexamining experts. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). More weight is also given to opinions that are explained. *Id.* An ALJ may reject the opinion of a treating physician if it is controverted by other

8 - FINDINGS AND RECOMMENDATION

treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002) (citations omitted). The ALJ may reject an uncontroverted opinion only by clear and convincing reasons. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ may also reject physician opinions that are brief, conclusory, or not supported by clinical findings. *Id.* An ALJ may also reject physician opinions that rely primarily on a claimant's subjective complaints which are properly discounted. *Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir. 1989).

Assuming NP Anderson's assessment is Dr. Kim's opinion regarding Medina's limitations, it is controverted by the opinions of Dr. McKenna, an examining psychologist, Dr. Rullman, a testifying physician, and the opinions of the nonexamining consultants. Dr. McKenna found moderate limitations due to "her perceived medical limitations, depressed mood, apathetic attitude, and low motivation for making changes or actively participating in treatment." Admin. R. 306. Dr. Rullman testified that the diagnosis of Bipolar Disorder was from NP Anderson and not from a psychologist. *Id.* at 52. He noted Dr. McKenna had diagnosed depression. Regarding Dr. Kim's signature on NP Anderson's assessment, Dr. Rullman stated that Dr. Kim had "demonstrated abundantly" that she was an advocate. *Id.* Although Medina contends Dr. Rullman is not a good witness because he was unable to review all of the records, he had clearly reviewed the assessment of NP Anderson and at least some of Dr. Kim's records.

Dr. Henning, a nonexamining consultant, noted inconsistent statements and possible exaggeration or malingering in Medina's psychiatric exam. He further noted Medina initially claimed no mental impairments which was consistent with the statement of Medina's niece. *Id.*

at 310-322. The Commissioner relies on medical and psychological consultants to make findings of fact about the nature of a claimant's impairments and the severity of the functional limitations they impose. 20 C.F.R. §§ 404.1527(f), 416.927(f) SSR 96-6p. However, these reviewing sources do not treat or examine the claimant. The opinion of a non-examining physician by itself does not constitute substantial evidence to reject the opinion of a treating or examining physician. *Lester v. Chater,* 81 F.3d 821, 831 (9th Cir. 1995). It may, however, as in this case, constitute substantial evidence when it is consistent with other evidence in the record. *Andrews v. Shalala,* 53 F.3d at 1041.

Dr. Kim's medical notes focus entirely on the treatment of Medina's physical problems, except for noting that Medina was upset regarding her roommate. *Id.* at 356, 358, 631-632, 636, 643, 645-648, 649-650, 655, 657-658, 665, 672, 679-680, 687, 691, 694-695, 704, 711, 723-725, 727, 732. The ALJ noted that while it was difficult to assess whether Dr. Kim was advocating on behalf of Medina, her opinion departed substantially from the record. *Id.* at 18. Dr. Kim's endorsement of NP Anderson's assessment is not supported by her own medical notes. As noted above, the ALJ gave sufficient reasons for rejecting NP Anderson's assessment based on the mental health records. The ALJ also noted that Dr. Kim's 2009 letter stated she believed Medina was credible in her allegations of limitations. The ALJ properly discounted Medina's credibility and thus found Dr. Kim's reliance on Medina's assertion of limitations another reason to reject her opinion.

The ALJ can reject a controverted medical opinion, such as that of Dr. Kim, by providing specific, legitimate reasons supported by substantial evidence. *Bayliss v. Barnhart,* 427 F. 3d. at 1216. The ALJ provided those reason which are supported by substantial evidence. The court

10 - FINDINGS AND RECOMMENDATION

must uphold the ALJ's findings, even if evidence exists to support more than one rational interpretation of the evidence. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d at 1039-1040.

### B. Medina's Testimony

Although Medina did not directly argue the ALJ erred in assessing her credibility, the ALJ did provide sufficient reasons for rejecting Medina's allegations regarding the extent of her limitations. The ALJ must assess the credibility of the claimant regarding the severity of symptoms only if the claimant produces objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Medina has a medically determinable impairments which could produce her symptoms. When there is an underlying impairment and no evidence of malingering, an ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of his symptoms. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

When making a credibility evaluation, the ALJ may consider objective medical evidence and the claimant's treatment history as well as any unexplained failure to seek treatment or follow a prescribed course of treatment. *Smolen v. Chater*, 80 F.3d at 1284. The ALJ noted Medina had significant periods where she did not follow prescribed treatments, particularly as it pertained to managing her diabetes. Admin R. at 13, 17. He noted she failed to perform self foot exams, use insulin consistently, and monitor her blood sugar levels. *Id.* at 17, 228-230, 240-241, 253, 294,

11 - FINDINGS AND RECOMMENDATION

360-361, 364-365, 369, 373-374, 519-520, 724-725. The ALJ noted that this failure resulted in an exacerbation of her symptoms which improved when she followed prescribed treatment. *Id.* at 17, 490. Noncompliance with treatment recommendations is a relevant factor in assessing credibility. *Bunnell v. Sullivan,* 947 F.2d 341, 346 (9th Cir. 1991)(en banc). *See also,* 20 C.F.R. §§ 404.1530, 416.930;

The ALJ also noted that Medina asserted an inability to work due to severe low back pain, decreased motor function due to neuropathy, and asthma. He noted the medical expert at the hearing testified that the most recent lumbar MRI and recent x-rays were normal; some tests for neuropathy were normal; Medina failed to follow up with a neurologist; and the medical record did not support allegations of severe asthma. Admin. R. 17, 53-57.

The ALJ may also consider the claimant's daily activities, work record and the observations of physicians and third parties in a position to have personal knowledge about the claimant's functional limitations. *Smolen v. Chater,* 80 F. 3d. at 1284. The ALJ noted that Dr. McKenna noted Medina's low motivation for making changes was a primary barrier to returning to full time employment. Admin. R. at 17. He noted Medina testified she watched T.V. for most of the day and that she could not work because of difficulty using her left arm, pain, side effects of medication and depression. *Id.* at 16.

The ALJ found that Medina's medical records did not support the degree of alleged limitation. He also noted her failure to follow prescribed treatment and the exacerbating effects of that failure. The ALJ also considered the statement of the psychologist regarding her low motivation for making changes and her daily activities. He considered appropriate factors and drew reasonable inferences from substantial evidence in the record in assessing Medina's

12 - FINDINGS AND RECOMMENDATION

credibility. The ALJ's interpretation is not irrational and is therefore upheld. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d at 1039-1040.

The ALJ properly assessed Medina's RFC. He found she had severe impairments and limited her to sedentary work with restrictions. The ALJ evaluated the medical evidence and reached conclusions based on substantial evidence in the record. He assessed Medina's credibility and drew reasonable inferences regarding Medina's credibility regarding the severity of her impairments. The ALJ's determination of Medina's RFC is supported by substantial evidence in the record.

## V.    Vocational Evidence

Medina contends the ALJ erred at steps four and five of the decision-making process by relying on faulty vocational evidence. The ALJ found Medina could perform her past relevant work as a customer service representative and, although not required to do so, made a step five finding that there were other jobs in the national economy that Medina could perform. At step five, the Commissioner must show that significant numbers of jobs exist which the claimant can perform. *Andrews v. Shalala*, 53 F.3d at 1043. An ALJ can satisfy this burden by eliciting the testimony of a vocational expert ("VE") with a hypothetical question that sets forth all the limitations of the claimant supported by the record. *Id.; Osenbrock v. Apfel*, 240 F.3d 1157, 1162 - 1163 (9th Cir. 2001).

Medina contends the ALJ's conclusion is erroneous because he elicited testimony from the VE with hypothetical questions that did not contain severe mental limitations. As described above, the ALJ did not find these limitations credible. An ALJ is not required to incorporate limitations based on evidence that he properly discounted. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d at 1197; *Osenbrock v. Apfel*, 240 F.3d at 1164-1165. She further contends the

13 - FINDINGS AND RECOMMENDATION

VE testified a person that would miss two work days a month was unemployable and Dr. Kim's opinion was that she would miss two work days a month. However, the ALJ properly discounted this opinion and was not required to consider it as a limitation.

The VE testified that Medina could perform her past relevant work as a customer service representative and that a significant number of jobs exist in the national economy that Medina can perform. Admin. R. 60. The ALJ's conclusion that Medina is able to perform some work and is not disabled is supported by substantial evidence and free of legal error.

## CONCLUSION

Based on the foregoing, the ALJ's decision that Medina does not suffer from a disability within the meaning of the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision should be affirmed.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 18th day of April, 2011.

*/s/ Paul Papak*

Paul J. Papak
United States Magistrate Judge

15 - FINDINGS AND RECOMMENDATION